UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------

In re:

                                    Case No. 1-20-10903-MJK

EASTERN NIAGARA HOSPITAL, INC.,          Chapter 11

                        Debtor.

-----------------------------------------------------------

## NOTICE OF DEBTOR'S MOTION, PURSUANT TO
## 11 U.S.C. § 363, FOR AUTHORITY TO SELL
## AT PRIVATE SALE CERTAIN MEDICAL EQUIPMENT

**PLEASE TAKE NOTICE**, that the debtor and debtor in possession, Eastern Niagara

Hospital, Inc. (the "Debtor"), by its counsel, Barclay Damon LLP, will appear telephonically

before the Hon. Michael J. Kaplan, in the courtroom usually occupied by him at the United States

Bankruptcy Court, Robert H. Jackson U.S. Courthouse, Orleans Courtroom, 5th Floor, 2 Niagara

Square, Buffalo, New York 14202, on **July 26, 2023 at 11:00 a.m. (prevailing Eastern Time)**

(call-in 1-571-353-2301, courtroom ID 316729376#, and security passcode 9999#) or as soon

thereafter as counsel can be heard, seeking the entry of an Order, pursuant to 11 U.S.C. §§ 363(b)

and (m) authorizing the Debtor to sell certain medical equipment for a price of $150,000.00 "as is

where is" free and clear of liens, claims, and encumbrances to Retrieve Medical Equipment, all as

discussed more completely in this motion, for waiver of the 14-day stay imposed by Bankruptcy

Rule 6004(h), and for such other and further relief as the Court deems just and proper (the

"Motion").

**PLEASE TAKE FURTHER NOTICE**, that any objections to the Motion shall be set

forth in a writing describing the basis therefor, which shall be filed with the Court and served by

first-class mail upon Barclay Damon LLP, Attn: Jeffrey A. Dove, Esq. and Beth Ann Bivona,

Esq., Barclay Damon Tower, 125 East Jefferson Street, Syracuse, New York 13202 as soon as

practicable.

26594342.1

**PLEASE TAKE FURTHER NOTICE**, any appearances must conform with the Court's Administrative Order, entitled In re: Court Proceedings During COVID-19 Public Health Emergency, dated March 24, 2020 and updated on May 7, 2020, June 29, 2020, August 25, 2020, October 30, 2020, December 16, 2020, March 19, 2021, June 22, 2021, September 9, 2021, November 30, 2021, February 24, 2022, April 28, 2022, July 27, 2022, September 27, 2022, October 31, 2022, December 22, 2022, and March 29, 2023 available at https://www.nywb.uscourts.gov/court-coronavirus-covid-19-news-and-updates.

**PLEASE TAKE FURTHER NOTICE**, that the hearing may be adjourned from time to time without notice to any creditor or other party-in-interest other than by announcement of the adjourned date in open Court on the date of the hearing or any adjourned date thereof.

**PLEASE TAKE FURTHER NOTICE**, that copies of the Motion are available from the Clerk of the United States Bankruptcy Court, Robert H. Jackson U.S. Courthouse, 2 Niagara Square, Buffalo, New York 14202, via Pacer, http://pacer.psc.uscourts.gov, or from Barclay Damon LLP.

Dated: July 3, 2023
Syracuse, New York

**BARCLAY DAMON LLP**
*Counsel for Debtor and Debtor In Possession*

By: ___/s/Jeffrey A. Dove_____
Jeffrey A. Dove, Esq.
Beth Ann Bivona, Esq.
Office and Post Office Address
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 14302
Telephone: (315) 413-7112
Facsimile: (315) 703-7346
Email: jdove@barclaydamon.com
Email: bbivona@barclaydamon.com

26594342.1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

EASTERN NIAGARA HOSPITAL, INC.,

                Debtor.

_____

Case No. 1-20-10903-MJK

Chapter 11

### DEBTOR'S MOTION, PURSUANT TO 11 U.S.C. § 363, FOR AUTHORITY TO SELL AT PRIVATE SALE CERTAIN MEDICAL EQUIPMENT

Eastern Niagara Hospital, Inc., as debtor and debtor in possession (the "Debtor"), hereby moves this Court for entry of an Order, pursuant to 11 U.S.C. § 363 authorizing the Debtor to enter into an agreement , pursuant to 11 U.S.C. §§ 363(b) and (m) authorizing the Debtor to sell certain medical equipment (as identified herein) for a price of $150,000.00 "as is where is" free and clear of liens, claims, and encumbrances to Retrieve Medical Equipment("Retrieve"), for waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), and for such other and further relief as the Court deems just and proper (the "Motion"). In support of the Motion, the Debtor states as follows:

### BACKGROUND

1.      On July 8, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

2.      Prior to the Petition Date, on November 7, 2019, the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. The Debtor voluntarily dismissed that case so that it could receive funding under the Cares Act, Payroll Protection Program. After receiving said funding, the Debtor filed this case.

3.      The Debtor remains in possession and operation of its assets and continues to manage its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee has been appointed in this case.

1

4.     A committee of unsecured creditors (the "Committee") was appointed in this case by the United States Trustee pursuant to notice dated July 13, 2020.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" for the Western District of New York, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

6.     The relief sought herein is based upon Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

## RELIEF REQUESTED

7.     The Debtor seeks the Court's approval, pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 6004 for entry of an order substantially in the form attached hereto as **Exhibit A** ("Sale Order"), authorizing the private sale of medical equipment pursuant to the terms of that certain purchase order (the "Purchase Order") entered into between the Debtor and Retrieve.  A copy of the Purchase Order is attached hereto as **Exhibit B**.

## BACKGROUND

8.     The Debtor is a not-for-profit general hospital, organized and existing under the laws of the State of New York, licensed under Article 28 of the New York State Public Health Law.

9.     The Debtor owns and until June 17, 2023, operated medical facilities in Lockport, New York.

10.     Pursuant to the terms of closure plans filed with the New York State Department of Health ("DOH"), the Debtor closed down the hospital campus located at East Avenue in

2

Lockport, New York, and the Ambulatory Surgery Center located on Transit Road, Lockport, New York.

11.     Pursuant to the closure plans, the Debtor ceased providing health care services at the East Avenue campus and Transit Road ASC on June 17, 2023.

12.     Retrieve is a company that purchases equipment from hospitals, imaging centers, and other medical facilities.  Retrieve refurbishes equipment and then sells it to third parties.

13.     Retrieve made an offer to purchase certain medical equipment from the Debtor in the amount of $150,000.00.  *See,* **Exhibit B**.  The Purchase Order provides for the sale of the following equipment:

- 2008 GE AMX 4 Plus Portable X Ray
- 2016 Siemens Acuson S2000 with 18L6, 9L4, 6C1probes, Ultrasound
- 2016 Siemens Acuson SC2000 with 9L4, 4V1c, 8V3 probes, Ultrasound
- 2017 Quantum room with GE RFX table and Bucky and Carestream DRX Plus 3543C
- DR plate
- 2016 Siemens Acuson S1000 with 9L4, 4C1, 14L5 probes, Ultrasound
- Medrad Vistron CT Injector
- Liebel-Flarsheim Injector
- 2012 Empower CTA Injector
- 2009 Siemens Somatom Definition AS plus CTA Injector 64 Slice with injector
- 2004 Quinton Q stress test treadmill with workstation
- 2010 Siemens Sylvia Nuc cam
- 2016 Siemens Magnetom Essenza with coils, Injector, and MRI safe carts
- (4) Stryker ER Beds
- HillRoom Bed
- 2018 Glidescope video monitor
- (8) Covidien Kangaroo ePumps
- (16) Welch Allyn Monitors
- 2009 Datascope DPM 3
- 2010 Thermo Scientific Precision 2864
- (4) Mindray Passport 12s
- (28) Baxter Sigma Spectrum pumps (13 labeled bad)
- (15) Covidien Kendall SCD 700 Series
- (4) 2005 Baxter Drager D-Vapor units
- (3) 2006 Baxter Drager Vapor 2000

- (3) 2020 Stryker Smoke Evacuator ULPA Filter
- (3) 2015 ConMed Aer Defense filters
- (3) Bipap S/T Vents
- 1997 Blickman Blanket Warmer (Big)
- 1996 Blickman Blanket Warmer (Table top)
- Amsco Stage 3 444 sterilizer
- Amsco Blanket Warmer
- (2) Amsco 2043 & 3023 autoclaves
- 2017 Sterrad 100NX AC Sterilizer
- Steris Autoclave
- 6 ER Rooms with Drager Infinity M540, Baxter Sigma Spectrum pump, and a Styker bed in each room
- Enthermics DC350

(collectively, "Medical Equipment").

14.     As the Medical Equipment would no longer be required after June 17, 2023, the Debtor solicited offers for the Medical Equipment from a number of potential purchasers.  The Debtor established a deadline of June 5, 2023 as the deadline for the receipt of offers.

15.     While a number of parties expressed interest in the Medical Equipment, Retrieve's Purchase Offer constituted the highest offer received by the June 5 deadline.  The Purchase Offer also provided for the removal of all the Medical Equipment from the Debtor's property, thereby relieving the Debtor of having to dispose of equipment that may not be immediately re-sold by Retrieve.

16.     A prompt sale and removal of the Medical Equipment is important to the Debtor and its estate, as certain of the equipment must remain "on" or it will suffer significant damage and loss of value.  Leaving the equipment "on", however, results in significant utility usage and related costs.  For all these reasons, the Debtor has determined that the Retrieve Purchase Offer is the highest and best offer for the Medical Equipment.

17.     Retrieve would like to purchase, and the Debtor would like to sell, the Medical Equipment pursuant to the terms of the Purchase Offer.

4

18.     The Purchase Order contains the terms, which include, but are not limited to, unless otherwise specified, the Medical Equipment must be in working order and must pass inspection; the acceptance of the Purchase Order is subject to Bankruptcy Court approval, and removal costs in excess of $10,000 will be borne by the Debtor.

19.     The Debtor now seeks to sell the Medical Equipment to Retrieve in an effort to maximize the value of these assets for the Debtor's estate.  Monetizing these assets at this price will result in the best return to the estate.  Retrieve is ready and able to acquire the Medical Equipment.  Retrieve agreed to cover the first $10,000 of removal expense.  The Debtor is not anticipating removal costs to exceed this amount.

20.     Additionally, no commission is due under the Purchase Order which will provide the Debtor savings and further maximize the benefit to the estate.

## BASIS FOR RELIEF

21.     The proposed sale meets the business judgment standard and should be approved.

## PRIVATE SALE

22.     While many section 363 sales are conducted under competitive bidding procedures, there is no requirement in section 363 of the Bankruptcy Code to do so.  In fact, Bankruptcy Rule 6004(f) specifically contemplates private sales with the statement that "all sales not in the ordinary course of business may be by private sale or by public auction."

23.     The sale of property in bankruptcy is not required to be subject to higher and better offers when circumstances warrant approval of a private sale.  *See, In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion to conduct public or private sales of estate property"); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In*

5

*re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property pursuant to Section 363 of the Bankruptcy Code, " [t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction").

24. Courts in New York have approved private sales of assets when they think the general standards for approval under Section 363 of the Bankruptcy Code are satisfied. *See, e.g. In re Wellman, Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2009) (order approving sales of one of the Debtors' facilities by private sale, not subject to higher and better offers): *In re Delta Air Lines, Inc.*, Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Nov. 29, 2005) (order authorizing the sale of certain aircraft by private sale and stating that "no auction was necessary with respect to sale of the [a]ircraft").

25. The Debtor submits that the facts in this case warrant approval of the private sale to Retrieve, and special circumstances exist to approve such a sale. Compared to a speculative upside in price if the Medical Equipment were subject to a public auction, it is certain that the delay associated with obtaining approval for bid and auction procedures and conducting the actual auction would cost the estate a significant amount just to maintain the Medical Equipment.

26. It is the Debtor's belief, based upon its diligence, that the price offered pursuant to the Purchase Order is fair and reasonable, and that the timing and certainty of approving the Purchase Order is preferable to pursuing an auction strategy with its attendant costs, uncertain results, and delay.

27. For all of these reasons, the private sale of the Medical Equipment as requested herein should therefore be approved.

26594342.1

## REQUIREMENTS UNDER SECTION 363(B) HAVE BEEN MET

28.     Section 363(b)(1) of the Bankruptcy Code provides in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides: "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In pertinent part, Bankr. Rule 6004 states that "all sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). With respect to the notice required in connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that,

> [T]he notice of a proposed use, sale or lease of property . . . shall include The terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale or lease of property, including real estate, is sufficient if it generally describes the property. Fed. R. Bankr. P. 2002(c)(1).

29.     Section 363 (b) of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate. However, bankruptcy courts have required that the authorization of such use, sale, or lease of property of the estate, when not pursued in the ordinary course of business, must be based upon the sound business judgment of the debtor. *See*, *In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992). *See also*, *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale, or lease of property outside the ordinary course of business).

30.     This fundamental analysis does not change if the proposed sale is a private sale rather than a public sale. *See, In re Ancor Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983). ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate's assets not in the ordinary course of business under § 363(b)).

Here, the proposed private sale of the Equipment meets all of these requirements and should be approved.

31.    Courts generally show great deference to a debtor in possession's decisions when applying the business judgment standard. *See, In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003). ("[t]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the case law.") Deference is inappropriate only if such business judgment is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Richmond Metal Finishers,* 756 F.2d at 1047).

32.    Once a court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether (i) adequate and reasonable notice has been provided to the interested parties, (ii) the sale price is fair and reasonable, and (iii) the purchaser's proceeding in good faith. *In re Betty Owens Sch.,* 1997 U.S. Dist. Lexis 5877 (S.D.N.Y. 1997); accord *In re Delaware and Hudson Ry. Co.* 124 B.R. 166, 169 (D.Del 1991). The business judgment standard has been met here.

33.    There is more than ample business justification, under the circumstances of this Chapter 11, to proceed with the sale of the Medical Equipment. Some factors include: (1) the Medical Equipment is idle and the Debtor has ceased it surgical operations; (2) the purchase price was determined after exposing the Medical Equipment for sale to an number of potential buyers; (3) the Debtor and Retrieve have negotiated the purchase as an arm's length good faith transaction; (4) Retrieve is ready to complete the transaction; and (5) the Medical Equipment is owned free and clear.

26594342.1

34.     Moreover, a private sale of the Medical Equipment pursuant to the Purchase Order, *see* **Exhibit B**, is more likely to close in a timely and efficient manner. The proposed closing date is upon entry of an order approving this private sale. Beyond the desire of the parties to move forward more expeditiously than a public sale process would permit, the Debtor believes a private sale would realize additional value over a public sale process. Given the parties' desire to close on an expedited basis, and the Debtor's informed business judgment, the private sale to Retrieve represents the best opportunity to realize the maximum value for the Medical Equipment.

35.     The Debtor submits that an order granting the relief requested herein is a matter within the discretion of the Court and is consistent with the provisions of the Bankruptcy Code.

36.     The Debtor owns the property free and clear of any liens and encumbrances. The Debtor believes the offer received is reasonable and is a fair value for the Medical Equipment. By selling the property as a private transaction, the Debtor avoids delays and expenses otherwise incurred in an auction process.

**THE PURCHASER AT THE PRIVATE SALE IS ENTITLED TO
THE PROTECTIONS AFFORDED TO GOOD FAITH PURCHASERS**

37.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the debtor notwithstanding the sale conducted under section 363(b) is later reversed or modified on appeal. Specifically, section 363(m) states that:

> the reversal or modification on appeal of an authorization under [section 262(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal  11 U.S.C. § 363(m).

Section 363(m) "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely'", *In re Chateaugay Corp.*, 1993 U.S. Dist. Lexis 6130, at *9 (S.D.N.Y. 1993) (quoting *In re Abbotts*

9

*Dairies of Penn., Inc.*, 788 F.2d 143, 147).  Section 363(m) also "provides that good-faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transfer he knew the pendency of the appeal." *Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y 1994).

38.    The terms of the agreement were negotiated at arm's length and in good faith. Accordingly, the Debtor requests this Court to determine that Retrieve is acting in good faith and entitled to the production of a good faith purchaser under section 363(m) of the Bankruptcy Code.

39.    For the reasons set forth herein, and as will be further shown at the sale hearing, Retrieve's offer provides a greater recovery for the estate than any known or practically available alternative, Debtor submits that the sale is an exercise of the Debtor's sound business judgment. The sale has been proposed in good faith, without collusion and the prospective purchaser is a good faith purchaser.

## WAIVER OF BANKRUPTCY RULE 6004

40.    To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004 (a) and that the Debtor has established cause to exclude such relief from the 14 day stay under Bankruptcy Rule 6004 (h).

## NOTICE

41.    Notice of this Motion has been given to the (i) Office of the United States Trustee; (ii) counsel for the Debtor's prepetition secured lender; (iii) counsel for the Committee of Unsecured Creditors; (iv) all creditors; and (v) any party requesting notice pursuant to Rule 2002 of the Bankruptcy Rules.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

10

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter the sale order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Motion and such other and further relief as may be just and proper .

Dated:   July 3, 2023                  **BARCLAY DAMON LLP**
        Syracuse, New York          *Counsel for Debtor and Debtor In Possession*

                                      By:    */s/Jeffrey A. Dove* _____
                                        Jeffrey A. Dove, Esq.
                                        Beth Ann Bivona, Esq.
                                        Office and Post Office Address
                                        Barclay Damon Tower
                                        125 East Jefferson Street
                                        Syracuse, New York 14302
                                        Telephone:  (315) 413-7112
                                        Facsimile:  (315) 703-7346
                                        Email:  jdove@barclaydamon.com
                                        Email:  bbivona@barclaydamon.com

11

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
In re:

       Case No. 1-20-10903-CLB

    EASTERN NIAGARA HOSPITAL, INC.,    Chapter 11

                Debtor.
-------------------------------------------------------------

**ORDER AUTHORIZING THE DEBTOR TO SELL CERTAIN MEDICAL
EQUIPMENT PURSUANT TO 11 U.S.C. § 363, AND WAIVING THE
FOURTEEN DAY STAY UNDER BANKRUPTCY RULE 6004(H)**

Upon the motion dated July 3, 2023 (the "Motion") of the debtor in possession, Eastern

Niagara Hospital, Inc. (the "Debtor"), by its counsel, Barclay Damon LLP, pursuant to 11 U.S.C.

§§ 363(b) and (m), seeking an order authorizing the Debtor to sell at a private sale certain medical

equipment ("Medical Equipment" as defined in Exhibit B to the Motion) to Retrieve Medical

Equipment ("Retrieve") in the amount of $150,000.00, "as is where is", free and clear of liens,

claims, and encumbrances, for waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h),

and for such other and further relief as the Court deems just and proper.

AND the Court finding and determining that:

(i)     the sale of the Medical Equipment is necessary and is in the best interest of the

Debtor, its creditors and its estate;

(ii)    the sale of the Medical Equipment pursuant to the Purchase Offer attached to the

Motion as Exhibit B is a sound exercise of the Debtor's business judgment and is in good faith;

(iii)   the Medical Equipment is owned by the Debtor free and clear of all liens;

(iv)   notice of the Motion has been given to the Office of the United States Trustee,

counsel for the Unsecured Creditors Committee, counsel for the Debtor's prepetition secured

lender, all creditors, and all other notice parties, and no other notice need be given;

1

(v)     a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested parties and entities;

(vi)     this Court has jurisdiction over the Motion; and

(vii)     sufficient cause appearing therefore,

NOW, upon all pleadings and proceedings had in this matter to date, and good cause appearing therefor, it is hereby

**ORDERED**, the Motion is GRANTED as hereinafter set forth; and it is further

**ORDERED**, that the Debtor's execution of the Purchase Order (attached to the Motion as Exhibit B) be and hereby is approved and authorized;

**ORDERED**, that pursuant to Sections 363(b) the Debtor is authorized and empowered to sell the Medical Equipment where is, as is, without representation, warranty, statement or guaranty of any kind, whether express or implied, free and clear of all interests and liens, by private sale to Retrieve, pursuant to the terms of the Purchase Order and this Order; and it is further

**ORDERED**, that the Debtor and its respective officers, employees, and agents are authorized and directed to take any and all actions necessary, appropriate or reasonably required by the Purchaser to perform, consummate, and implement the closing the sale of the Medical Equipment as contemplated by the Purchase Order;

**ORDERED**, that the Purchase Order has been negotiated and executed, and has been undertaken, by the Debtor, the Purchaser, and their respective representatives at arm's length, without collusion and in good faith, and the Purchaser is therefore and hereby afforded the protections of Bankruptcy Code Section 363(m); and it is further

**ORDERED**, that 100% of the net proceeds received by the Purchaser from the sale of the Medical Equipment shall be held in Debtor's counsel's escrow account and shall not be disbursed absent further order of this Court authorizing the disbursement; and it is further

**ORDERED**, that this order constitutes a final and appealable order within the meaning of 28 U.S.C. §158(a) and that the 14-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

Dated: _____ 2023
       Buffalo, New York

                                _____
                                  MICHAEL J. KAPLAN
                                  U.S. BANKRUPTCY JUDGE

# EXHIBIT B

# Purchase Order



PO No:  2923 R2

June 26, 2023

**Quotation to:**
Mark Kercher
Eastern Niagara Hospital
521 East Avenue
Lockport New York  14094

**Prepared by:**
Retrieve Medical Equipment
1340 Corporate Dr
Ste 500
Hudson, Ohio
44236
330-963-0277
http://www.retrievemedicalequipment.com

| Description | Price |
|---|---:|
| - 2008 GE AMX 4  Plus Portable X Ray | $150,000 |
| - 2016 Siemens  Acuson S2000 with 18L6, 9L4, 6C1probes, Ultrasound | |
| - 2016 Siemens  Acuson SC2000 with 9L4, 4V1c, 8V3 probes, Ultrasound | |
| - 2017 Quantum  room with GE RFX table and Bucky and Carestream DRX Plus 3543C DR plate | |
| - 2016 Siemens  Acuson S1000 with 9L4, 4C1, 14L5 probes, Ultrasound | |
| - Medrad  Vistron CT Injector | |
| - Liebel-Flarsheim Injector | |
| - 2012 Empower  CTA Injector | |
| - 2009 Siemens  Somatom Definition AS plus CTA Injector 64 Slice with injector | |
| - 2004 Quinton  Q stress test treadmill with workstation | |
| - 2010 Siemens  Sylvia Nuc cam | |
| - 2016 Siemens  Magnetom Essenza with coils, Injector, and MRI safe carts | |

Continued on page 2

| Description | Price |
|---|---|

- (4) Stryker  ER Beds
- HillRoom Bed
- 2018  Glidescope video monitor
- (8) Covidien  Kangaroo ePumps
- (16) Welch  Allyn Monitors
- 2009  Datascope DPM 3
- 2010 Thermo  Scientific Precision 2864
- (4) Mindray  Passport 12s
- (28) Baxter  Sigma Spectrum pumps (13 labeled bad)
- (15) Covidien  Kendall SCD 700 Series
- (4) 2005 Baxter Drager D-Vapor units
- (3) 2006  Baxter Drager Vapor 2000
- (3) 2020  Stryker Smoke Evacuator ULPA Filter
- (3) 2015  ConMed Aer Defense filters
- (3) Bipap S/T  Vents
- 1997 Blickman  Blanket Warmer (Big)
- 1996 Blickman  Blanket Warmer (Table top)
- Amsco Stage 3  444 sterilizer
- Amsco Blanket  Warmer
- (2) Amsco  2043 & 3023 autoclaves
- 2017 Sterrad  100NX AC Sterilizer
- Steris  Autoclave
- 6 ER Rooms  with Drager Infinity M540, Baxter Sigma Spectrum pump, and a Styker bed in each  room
- Enthermics  DC350

| Total | $150,000 |
|---|---|

## Terms and Conditions:

Equipment sold in working order. Must pass inspection. Pricing valid until 6/23/23 1:30 p.m. EST. Eastern Niagra Hospital's acceptance of the PO is subject to approval of the court system.

Removal costs included. Rigging is capped at $10,000. Rigging charges above $10,000 will be charged to the hospital.

To accept this Purchase Order, please sign below. If you have any questions, contact us at 330-963-0277.

**PURCHASE ORDER**

Purchase Order (PO) TERMS. Agreement by Seller to furnish the equipment, or acceptance of any payment, shall constitute Seller's unqualified acceptance of this Purchase Order. These PO terms are applicable to and govern this PO issued to Seller by Retrieve Medical Equipment, LLC ("Buyer") for goods, materials, equipment, software (i.e., "Deliverables"), or services listed in the PO. All references herein to "the PO" include these PO terms. Either (a) receipt by Buyer of a signed or electronic acknowledgement of the PO from Seller, or (b) shipment or provision of any portion of the Deliverables or services, will constitute an unqualified acceptance of all PO terms and will be binding on Seller and Buyer. The PO will constitute the complete and exclusive statement of the agreement between Seller and Buyer with respect to the subject matter hereof, and no part of the PO will be added to, modified, or superseded except as mutually agreed in writing. Seller agrees that any provisions contained in any acknowledgement hereof or in Seller's invoice that are inconsistent with or in addition to the PO will have no effect, and will not constitute any part of the PO. Formal contract terms may be used as default terms. Once Seller receives signed and approved agreement from Buyer, the Seller will not market to or accept a purchase or agreement from another party.

PRICE. Buyer will not pay higher prices for the Deliverables than those stated on the PO unless confirmation with correct pricing is received and acknowledged by the Buyer in the form of a corrected PO. Unless otherwise specified, the prices include all charges for packaging, handling, storage and delivery. Seller will pay all delivery charges in excess of the delivery charges which Buyer has agreed in writing to pay. If Seller makes any price reductions after the date of this PO but prior to the payment date, such price reductions will be applicable to this PO. Seller warrants that the prices of the Deliverables covered by this PO are not in excess of the Seller's lowest prices in effect on the date of this PO for comparable quantities of similar Goods.

PAYMENT. Upon commitment by the Seller, Buyer will secure equipment with a 20% deposit into an escrow acount. Full payment will be made to Seller prior to removal of equipment. Buyer reserves the right to cancel orders for any reason prior to removal and with written notice for a full refund, returned within 48 hours. Buyer will pay Seller's correct and undisputed invoices on receipt of such invoices for Deliverables or services received by Buyer. Buyer is entitled to adjust any payments for rejection or any setoff or counterclaim arising out of this PO or any other of Buyer's purchase orders with Seller.

DEINSTALLATION, REMOVAL, PACKING, SHIPPING, DELIVERY, RISK OF LOSS, AND TITLE. The Seller understands that the unit will be de-installed on a mutually agreeable date, within 7 days from complete payment. Seller is responsible for the entire cost of asbestos removal, structural modifications or any other materials or building alterations (walls, doors, ceilings, etc.) required to permit the Purchaser or 3rd party agent open access for an unobstructed deinstallation and removal unless agreed upon in writing as an amendment to contract. Buyer or its designee is responsible for deinstallation, removal, crating, and shipping and leaving the area free of debris. Full cooperation of all parties is requested to schedule inspections and/or deinstallation to insure maximum optimization and efficiency. All inspections and/or deinstallation work to be performed by Buyer or its designee will be performed during normal working hours of 7am to 6pm. Monday thru Friday, access on holidays or weekends if agreed upon by both parties. Seller will not charge Buyer for any packaging or delivery unless stated in the PO. Risk of loss for the Deliverables will pass from Seller to Buyer only upon receipt of delivery by Buyer. Seller will bear all risk of loss for rejected Deliverables after written notice of rejection has been provided. Title will pass on the later of acceptance or final payment for Deliverables.

INSPECTION AND ACCEPTANCE. Buyer reserves the right to inspect equipment via phone or physical inspection to determine functionality as stated by the Seller. If equipment does not meet as stated or in the event the system fails inspection, price can be renegotiated or agreement can be cancelled, with full refund of deposit made to Buyer within 48 hours. Inspection will be completed within 7 days of the acceptance of this agreement.

WARRANTIES.  Seller represents and warrants that: (a) all  Deliverables and all services will fully conform to the PO, the applicable  documentation, specifications, samples, Request for Proposal responses,  proposals, requirements, or other descriptions given. Seller has the duty of  100% accurately representing the equipment's cosmetic conditions, working condition, age of equipment, usage, functionality, specifications, capabilities  and accessories. Seller will be held responsible for any misrepresentations  causing damage to Buyer and Buyer will reserve the right to cancel order and  collect damages. Seller is responsible for maintaining the system operation and  condition as represented prior to removal. Seller is responsible to provide  detailed pictures verifying condition, serial number and age of the system.  Buyer may require a calibration report to verify functionality as well as last  PM reports. (b) the Deliverables will be free and clear of any and all claims,  liens, and encumbrances and all components including manuals are with the  system, and Seller states unit is in good working order unless otherwise  stated. (c) the Deliverables and services are and will be in compliance with  all applicable laws, rules, regulations, and ordinances which govern the  manufacture, sale, delivery or provision of the Deliverables and services; and
 (d) if any Deliverables or services are subject to any manufacturer's  warranties, Seller will assign such warranties to Buyer.

HIPPA COMPLIANCE: Seller acknowledges that they are in compliance with HIPAA Law and all patient data will be permanently deleted.

INDEMNIFICATION.  Seller agrees to indemnify, defend and hold  harmless the Buyer, its directors, officers, employees and agents from any and  all liabilities, claims, damages, loss and costs (including reasonable  attorney's fees) to the extent arising from the negligent acts or omissions or  willful misconduct of the Seller or from the Seller's breach of its obligations  under this agreement. The Buyer shall promptly notify the Seller of any claims  for which indemnification is sought.   However, the Buyer shall not be responsible for any liability, damages,  losses or costs that are incurred because of a delay in giving such notice except to the extent that the Seller is prejudiced by the delay.  Seller shall assume the defense of any claim  for which indemnification is sought using legal counsel reasonably acceptable  to the Buyer. The Seller shall not enter into a settlement of any claim that is  the subject of the indemnification without the prior written consent of the  Buyer (which consent shall not be unreasonably withheld or delayed).

SOFTWARE  (IF APPLICABLE).  To the extent any  Deliverables include any software, Seller grants to Buyer a perpetual, royalty-free, nonexclusive license to use such software (including third-party  or packaged software) and its related documentation effective as of the date of  the PO.

TERMINATION.  Notwithstanding acceptance of Deliverables or  any performance after Seller's breach, Buyer will have the right to immediately  cancel and terminate the PO without cost or liability to Buyer if Seller breaches  any part of the PO, or if Seller is otherwise unable to meet its obligations as  they become due.  Buyer may also  terminate the PO for convenience at any time and for any reason by providing 30  days notices.

MISCELLANEOUS.  Assignment: If Seller delegates or assigns any duties or claims under the PO  without Buyer's prior written consent, then Buyer will have the right to cancel  all of Buyer's obligations under the PO, without liability or cost to  Buyer. Governing Law and Attorney Fees:  This PO will be governed by and construed in accordance with the laws of the  State of Ohio.  Seller consents to  personal jurisdiction in the State of Ohio.   Venue for any dispute arising out of the PO, or the subject matter  hereof, or related directly or indirectly to the foregoing, will be in Summit  County, Ohio.  In any litigation,  mediation, or other legal proceeding relating to the PO, the prevailing party  will be entitled to recover from the other party its reasonable attorney fees  together with expenses and costs incurred therein.  Identification: Without Buyer's prior written  consent, Seller will not engage in promotion or publicity related to the PO, or  make public use of any copy or semblance of any trade name, trademark, service  mark, insignia, symbol, or logo of Buyer.

Limitation of Damages: IN NO EVENT WILL BUYER BE LIABLE FOR ANY CONSEQUENTIAL, SPECIAL, INCIDENTAL OR INDIRECT DAMAGES, INCLUDING WITHOUT LIMITATION LOST PROFITS, RELATED TO THIS PO. Notices: All notices required or permitted to be given hereunder shall be in writing, shall refer to the PO, and shall be delivered by hand, or dispatched by prepaid overnight courier or by U.S. Postal Service, postage prepaid. Partial Invalidity; No waiver: If any provision of the PO is or becomes void or unenforceable by force or operation of law, the other provisions will remain valid and enforceable. The failure of either party to enforce any of its rights under the PO will not constitute a waiver of such rights or of any other rights under the PO Remedies: No remedy conferred by any of the specific provisions of the PO is intended to be exclusive of any other remedy, and each and every remedy will be cumulative and will be in addition to every other remedy given hereunder, now or hereafter, existing at law, in equity, by statute or otherwise. The election of any one or more remedies by either party will not constitute a waiver of the right to pursue other available remedies. Seller Cooperation: Seller agrees to cooperate with Buyer in any instance involving a report or complaint under the Safe Medical Devices Act or other applicable law by providing information useful or necessary in connection with such report or complaint.

In witness whereof, intending to be legally bound hereby, the undersigned authorized representatives of the parties have executed this Agreement as of the dates set forth below.

*Mark Kercher*

2023-06-26 14:14:41 (EDT)

*Randall Brunswick*

2023-06-27 13:52:10 (EDT)